Judge Berman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

'09 CIV 3161

---------------------------------------------- x

ALFRED FAIT, Individually and on Behalf of :    Civil Action No.
All Others Similarly Situated,                 :

               Plaintiff,    :

    vs.                                :

REGIONS FINANCIAL CORPORATION, :
REGIONS FINANCING TRUST III, C.
DOWD RITTER, SAMUEL W.
BARTHOLOMEW, JR., GEORGE W.
BRYAN, DAVID J. COOPER, EARNEST W. :
DEAVENPORT, JR., DON DeFOSSET,
JAMES R. MALONE, SUSAN W.
MATLOCK, CHARLES D. McCRARY,
CLAUDE B. NIELSEN, JORGE M. PEREZ, :
LEE J. STYSLINGER, III, SPENCE L.
WILSON, JOHN R. ROBERTS, UBS
SECURITIES LLC, CITIGROUP GLOBAL
MARKETS INC., MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED, WACHOVIA CAPITAL :
MARKETS, LLC, MORGAN STANLEY &
CO. INCORPORATED, MORGAN KEEGAN :
& COMPANY, INC. and ERNST & YOUNG
LLP,                                 :

             Defendants.    :

---------------------------------------------- x

CLASS ACTION

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS



DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.    This is a securities class action on behalf of all persons who acquired the 8.875% Trust Preferred Securities of Regions Financing Capital Trust III (the "Securities") pursuant or traceable to a materially false and misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the April 2008 offering of the Securities (the "Offering"). This action asserts strict liability claims under the Securities Act of 1933 ("1933 Act") against Regions Financial Corporation ("Regions" or the "Company"), certain of its subsidiaries, its senior insiders, its auditors, and the investment banks that underwrote the Offering (collectively, "defendants").

2.    Regions provides consumer and commercial banking, trust, securities brokerage, mortgage and insurance products and services. In April of 2008, Regions consummated the Offering pursuant to the false and misleading Registration Statement, selling 13.8 million shares of the Securities at $25 per share for proceeds of $345 million. The Registration Statement incorporated Regions' financial results for 2007.

3.    The true facts which were omitted from the Registration Statement were:

    (a)    The Company failed to properly record provisions for loan losses;

    (b)    The Company failed to properly account for impaired assets;

    (c)    The Company failed to properly account for goodwill;

    (d)    The Company's internal controls were inadequate to prevent it from improperly recording provisions for loan losses, improperly accounting for impaired assets, and improperly accounting for goodwill; and

    (e)    The Company was not as well capitalized as represented.

4.    On January 20, 2009, Regions issued a press release entitled "Regions Reports Fourth Quarter 2008 Loss Largely Driven by Non-cash Goodwill Impairment Charge," which stated in part:

- Loss of $9.01 diluted share for the quarter ended December 31, 2008 was largely driven by a $6 billion non-cash charge for impairment of goodwill.

*      *      *

- Accelerated disposition of problem assets, with approximately $1 billion in non-performing assets sold or transferred to held for sale, resulting in approximately $479 million of losses

- Net loan charge-offs rose to an annualized 3.19 percent of average loans

- Increased loan loss provision to $1.150 billion, $354 million above net charge-offs; raised allowance for credit losses to 1.95 percent of loans

*      *      *

The results of goodwill impairment testing at the end of the fourth quarter indicated that the estimated fair value of Regions' banking reporting unit was less than its book value . . . .

*      *      *

During the fourth quarter, Regions either sold or transferred to held for sales approximately $1 billion of non-performing loans and foreclosed properties. Losses on those transactions, most of which was included in net-charge-offs, totaled $479 million, driving the linked-quarter increase in net loan charge-offs.

*      *      *

Total fourth quarter net loan charge-offs rose to $796 million, or to an annualized 3.19 percent of average loans, from third quarter's $416 million, or 1.68 percent. Commercial real estate construction write-offs, primarily related to homebuilders and condominiums, drove the losses.

*      *      *

Fourth quarter's provision for loan losses increased to $1.150 billion, $354 million above net charge-offs and $733 million higher than the third quarter. This increased provision raised the company's allowance for credit losses to 1.95 percent of loans, up 38 basis points linked quarter. Continued declines in housing and residential-related construction project values, as well as rising unemployment, necessitated the reserve increase.

5.     As a result of this disclosure, the price of the Securities dropped significantly.

## JURISDICTION AND VENUE

6.    The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the 1933 Act [15 U.S.C. §§77k, 77l(a)(2) and 77o]. In connection with the acts complained of, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the 1933 Act.

8.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because the underwriter defendants conduct business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

9.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

10.    Plaintiff Alfred Fait acquired the Securities pursuant or traceable to the Offering as set forth in the attached certification and has been damaged thereby.

11.    Defendant Regions provides consumer and commercial banking, trust, securities brokerage, mortgage and insurance products and services.

12.    Defendant Regions Financing Capital Trust III ("Regions Trust III") is a Delaware statutory trust formed for the purpose of issuing the Securities and other common securities. Regions Trust III used the proceeds from the Offering to buy Junior Subordinated Notes from Regions.

- 3 -

13.    Defendant C. Dowd Ritter ("Ritter") was, at all relevant times, President, Chief Executive Officer ("CEO"), and a director of Regions.  Ritter signed the false and misleading Registration Statement.

14.    Defendant Samuel W. Bartholomew ("Bartholomew") was, at all relevant times, a director of Regions.  Bartholomew signed the false and misleading Registration Statement.

15.    Defendant George W. Bryan ("Bryan") was, at all relevant times, a director of Regions.  Bryan signed the false and misleading Registration Statement.

16.    Defendant David J. Cooper ("Cooper") was, at all relevant times, a director of Regions.  Cooper signed the false and misleading Registration Statement.

17.    Defendant Earnest W. Deavenport, Jr. ("Deavenport") was, at all relevant times, a director of Regions.  Deavenport signed the false and misleading Registration Statement.

18.    Defendant Don DeFosset ("DeFosset") was, at all relevant times, a director of Regions.  DeFosset signed the false and misleading Registration Statement.

19.    Defendant James R. Malone ("Malone") was, at all relevant times, a director of Regions.  Malone signed the false and misleading Registration Statement.

20.    Defendant Susan W. Matlock ("Matlock") was, at all relevant times, a director of Regions.  Matlock signed the false and misleading Registration Statement.

21.    Defendant Charles D. McCrary ("McCrary") was, at all relevant times, a director of Regions.  McCrary signed the false and misleading Registration Statement.

22.    Defendant Claude B. Nielsen ("Nielsen") was, at all relevant times, a director of Regions.  Nielsen signed the false and misleading Registration Statement.

23.    Defendant Jorge M. Perez ("Perez") was, at all relevant times, a director of Regions.  Perez signed the false and misleading Registration Statement.

24.    Defendant Lee J. Styslinger, III ("Styslinger") was, at all relevant times, a director of Regions. Styslinger signed the false and misleading Registration Statement.

25.    Defendant Spence L. Wilson ("Wilson") was, at all relevant times, a director of Regions. Wilson signed the false and misleading Registration Statement.

26.    Defendant John R. Roberts ("Roberts") was, at all relevant times, a director of Regions. Roberts signed the false and misleading Registration Statement.

27.    The defendants named above in ¶¶13-26 are referred to herein as the "Individual Defendants."

28.    Defendant UBS Securities LLC ("UBS") is the U.S. investment banking and securities arm of UBS Investment Bank. UBS Investment Bank provides a range of financial products and services worldwide. UBS acted as an underwriter in connection with the Offering.

29.    Defendant Citigroup Global Markets Inc. ("Citigroup") is a large integrated financial services institution that through subsidiaries and divisions provides commercial and investment banking services, commercial loans to corporate entities, and acts as underwriter in the sale of corporate securities. Citigroup acted as an underwriter in connection with the Offering.

30.    Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") provides capital markets services, investment banking and advisory services, wealth management, asset management, insurance, banking and related products and services on a global basis. Merrill Lynch acted as an underwriter in connection with the Offering.

31.    Defendant Wachovia Capital Markets, LLC ("Wachovia Capital") is the corporate and investment banking side of brokerage firm Wachovia Securities (both companies are subsidiaries of banking giant Wachovia). Wachovia Capital provides financial and corporate advisory services, private capital, debt private placement, mergers and acquisitions advice,

underwriting, and equity investing. It also offers real estate financing, risk management services, and structured products such as asset-backed and mortgage-backed securities. Wachovia Capital acted as an underwriter in connection with the Offering.

32.     Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a global financial services firm that, through its subsidiaries and affiliates, provides its products and services to customers, including corporations, governments, financial institutions and individuals. Morgan Stanley assists public and private corporations in raising funds in the capital markets (both equity and debt), as well as in providing strategic advisory services for mergers, acquisitions and other types of financial transactions. Morgan Stanley acted as an underwriter in connection with the Offering.

33.     Defendant Morgan Keegan & Company, Inc. ("Morgan Keegan") provides brokerage, investment banking, trust, and other financial services to individuals and institutions. Morgan Keegan acted as an underwriter in connection with the Offering.

34.     Pursuant to the 1933 Act, the defendants referenced in ¶¶28-33 above are referred to herein as the "Underwriter Defendants."

35.     The Underwriter Defendants are *strictly liable* for the false and misleading statements in the Registration Statement. In connection with the Offering, the Underwriter Defendants drafted and disseminated the Registration Statement and were paid fees in connection therewith. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

36.     Defendant Ernst & Young LLP ("E&Y") is an audit, tax and advisory firm that served as the Company's auditor during the relevant period and, with its consent, was named as having

certified a portion of the Registration Statement, as well as the financial statements in Regions' 2007 Form 10-K.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired the Securities pursuant or traceable to the Company's false and misleading Registration Statement issued in connection with the Company's Offering and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

38.    The members of the Class are so numerous that joinder of all members is impracticable. The Securities were actively traded on the New York Stock Exchange ("NYSE"). While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Regions or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class were similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

40.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

41.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the

- 7 -

questions of law and fact common to the Class are: whether the 1933 Act was violated by defendants' acts as alleged herein; whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and management of Regions; and to what extent the members of the Class have sustained damages and the proper measure of damages.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## THE FALSE AND DEFECTIVE REGISTRATION
## STATEMENT AND PROSPECTUS

43.    On or about May 11, 2007, Regions filed with the SEC a Form S-3 Registration Statement (the "Registration Statement"), which stated:

> The SEC allows us to "incorporate by reference" into this prospectus the information in documents we file with the SEC, which means that we can disclose important information to you by referring you to those documents. The information incorporated by reference is considered to be a part of this prospectus and should be read with the same care. When we update the information contained in documents that have been incorporated by reference, by making future filings with the SEC, the information incorporated by reference in this prospectus is considered to be automatically updated and superseded. In other words, in all cases, if you are considering whether to rely on information contained in this prospectus or information incorporated by reference into this prospectus, you should rely on the information contained in the document that was filed later. We incorporate by reference the documents listed below and any additional documents we file with the SEC in the future under Sections 13(a), 13(c), 14, or 15(d) of the Securities Exchange Act of 1934 until our offering is completed (other than information in such additional documents that are deemed, under SEC rules, not to have been filed):

• Annual Report on Form 10-K for the year ended December 31, 2006;

• Quarterly Report on Form 10-Q for the quarter ended March 31, 2007;

- Current Reports on Form 8-K filed on January 8, 2007, January 24, 2007, January 30, 2007, March 14, 2007, April 13, 2007 and April 20, 2007, and two Forms 8-K filed on April 30, 2007, and Form 8-K/A filed on January 12, 2007, amending the Form 8-K filed on November 6, 2006; and

- The description of our common stock set forth in our registration statement filed with the SEC pursuant to Section 12 of the Securities Exchange Act of 1934 and any amendment or report filed for the purpose of updating any such description.

44.    On or about April 28, 2008, Regions filed its prospectus for the Offering, which

formed part of the Registration Statement. The Prospectus stated:

Regions Financial Corporation is a Delaware corporation and financial holding company headquartered in Birmingham, Alabama, which operates throughout the South, Midwest and Texas. Regions provides traditional commercial, retail and mortgage banking services, as well as other financial services in the fields of investment banking, asset management, trust, mutual funds, securities brokerage, insurance and other specialty financing. At December 31, 2007, Regions had total consolidated assets of approximately $141.0 billion, total consolidated deposits of approximately $94.8 billion and total consolidated stockholders' equity of approximately $19.8 billion.

45.    The Prospectus also stated:

The SEC allows us to "incorporate by reference" into this prospectus supplement the information we file with it, which means that we can disclose important information to you by referring you to those documents. The information incorporated by reference is an important part of this prospectus supplement and information that we subsequently file with the SEC will automatically update and supersede information in this prospectus supplement and in our other filings with the SEC. We incorporate by reference the documents listed below, which we have already filed with the SEC, and any future filings we make with the SEC under Section 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934, or "Exchange Act," until we sell all the securities offered by this prospectus supplement (in each case, other than information that is deemed, under SEC rules, not to have been filed):

- Annual Report on Form 10-K for the year ended December 31, 2007; and

- Current Reports on Form 8-K filed on January 24, 2008, February 20, 2008, February 27, 2008, February 29, 2008, and April 22, 2008.

46.    The Form 10-K for the year 2007, incorporated by reference into the Registration

Statement and Prospectus, reported provisions for loan losses of $555 million, net income of $1.251

billion, assets of $141 billion, and stockholders' equity of $20 billion. Regarding provisions for loan losses, the 2007 10-K stated:

> The provision for loan losses is used to maintain the allowance for loan losses at a level that, in management's judgment, is adequate to cover losses inherent in the loan portfolio as of the balance sheet date. During 2007, the provision for loan losses from continuing operations increased to $555.0 million compared to $142.4 million in 2006. Two primary factors led to the increase. Most notably, 2006 included just two months of provision for loan losses added to the portfolio as a result of the November 2006 merger with AmSouth, while the provision recorded in 2007 reflected the results of the newly merged Regions for the full year. Additionally, the provision rose due to an increase in management's estimate of inherent losses in its residential homebuilder portfolio, as well as generally weaker conditions in the broader economy.

> As a result of the general economic environment and the deteriorating credit conditions described above, which accelerated late in 2007, Regions increased its allowance for credit losses through a loan loss provision from continuing operations of $555.0 million and a provision for unfunded commitments of $6.4 million, $358.0 million and $2.4 million of which, respectively, were expensed in the fourth quarter. These provisions drove the allowance for credit losses up to 1.45 percent of total loans, net of unearned income, at December 31, 2007, as compared to 1.17 percent at December 31, 2006.

47.    The 2007 10-K also contained the following statement by Regions' auditor, E&Y:

REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

THE BOARD OF DIRECTORS AND SHAREHOLDERS OF REGIONS FINANCIAL CORPORATION

We have audited Regions Financial Corporation's internal control over financial reporting as of December 31, 2007, based on criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (the COSO criteria). Regions Financial Corporation's management is responsible for maintaining effective internal control over financial reporting, and for its assessment of the effectiveness of internal control over financial reporting included in the accompanying Report of Management on Internal Control Over Financial Reporting. Our responsibility is to express an opinion on the company's internal control over financial reporting based on our audit.

We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects. Our

audit included obtaining an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, testing and evaluating the design and operating effectiveness of internal control based on the assessed risk, and performing such other procedures as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion.

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

In our opinion, Regions Financial Corporation maintained, in all material respects, effective internal control over financial reporting as of December 31, 2007, based on the COSO criteria.

We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the consolidated balance sheets of Regions Financial Corporation and subsidiaries as of December 31, 2007 and 2006, and the related consolidated statements of income, changes in stockholders' equity, and cash flows for each of the three years in the period ended December 31, 2007 of Regions Financial Corporation and our report dated February 26, 2008, expressed an unqualified opinion thereon.

Ernst & Young LLP
Birmingham, Alabama

February 26, 2008

48.    The 2007 10-K also contained the following statement by E&Y:

REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

THE BOARD OF DIRECTORS AND SHAREHOLDERS OF REGIONS FINANCIAL CORPORATION

We have audited the accompanying consolidated balance sheets of Regions Financial Corporation and subsidiaries as of December 31, 2007 and 2006, and the related consolidated statements of income, changes in stockholders' equity, and cash flows for each of the three years in the period ended December 31, 2007. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the consolidated financial position of Regions Financial Corporation and subsidiaries at December 31, 2007 and 2006, and the consolidated results of their operations and their cash flows for each of the three years in the period ended December 31, 2007, in conformity with U.S. generally accepted accounting principles.

As discussed in Notes 1 and 19 to the consolidated financial statements, effective January 1, 2007 Regions Financial Corporation adopted Financial Accounting Standards Board Interpretation Number 48, *Accounting for Uncertainty in Income Taxes – an Interpretation of FASB Statement Number 109*.

We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), Regions Financial Corporation's internal control over financial reporting as of December 31, 2007, based on criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission and our report dated February 26, 2008, expressed an unqualified opinion thereon.

Ernst & Young LLP
Birmingham, Alabama

February 26, 2008

- 12 -

49.    On April 15, 2008, Regions filed a Form 8-K with the SEC that incorporated a

Company press release of the same date, which stated in part:

First quarter EPS of 55 cents, excluding merger-related charges

Regions' first quarter 2008 net income was $336.7 million, or 48 cents per diluted share, which included $75.6 million in pre-tax merger-related expenses. Excluding the impact of merger-related expenses, earnings per diluted share from continuing operations were 55 cents compared to the previous quarter's 24 cents. Pre-tax earnings also reflect $131.9 million in non-merger related charges and valuation adjustments, $182.8 million in investment securities gains and Visa-related share redemption and litigation expense reduction, and a $181.0 million provision for loan losses.

\*    \*    \*

Annualized net charge-offs of 53 basis points of average loans, non-performing assets at 125 basis points of loans and other real estate

Net loan charge-offs increased to $125.8 million, or an annualized 0.53 percent of average net loans, in the first quarter of 2008 compared to $107.5 million, or an annualized 0.45 percent of average net loans, in the prior quarter. The linked-quarter increase was primarily driven by the previously discussed residential homebuilder portfolio and the Company's home equity portfolio, both of which are closely tied to the housing market slowdown. Although the home equity portfolio weakened due to declining residential property values, losses remain manageable at an annualized 0.57 percent of related average outstandings and compare favorably relative to Regions' peer group.

The company is aggressively managing its residential homebuilder portfolio. Overall exposure to this portfolio now stands at $6.2 billion.

Indicative of the more challenging credit environment, the first quarter's loan loss provision totaled $181.0 million, or $55 million above first quarter net loan charge-offs. The total allowance for credit losses was 1.49 percent of net loans at March 31, 2008, an increase over the prior quarter's 1.45 percent.

Total non-performing assets at March 31, 2008, were $1,204.4 million, or 1.25 percent of loans and other real estate, compared to $864.1 million, or 0.90 percent at December 31, 2007. Non-performing assets and net charge-off levels are expected to continue upward in 2008 as the strained economic climate continues.

\*    \*    \*

Capital position remains strong

At March 31, 2008, Regions' capital position, as measured by the tangible stockholders' equity-to-tangible assets ratio, was 5.90 percent. This compared to 5.88 percent at December 31, 2007.

50.    On or about April 28, 2008, defendants sold 13.8 million shares of the Securities to the public at $25.00 per share pursuant to the Registration Statement and Prospectus.

51.    The Registration Statement and Prospectus contained untrue statements of material fact or omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable SEC rules and regulations.

52.    The true facts which were omitted from the Registration Statement were:

      (a)    The Company failed to properly record provisions for loan losses;

      (b)    The Company failed to properly account for impaired assets;

      (c)    The Company failed to properly account for goodwill;

      (d)    The Company's internal controls were inadequate to prevent it from improperly recording provisions for loan losses, improperly accounting for impaired assets, and improperly accounting for goodwill; and

      (e)    The Company was not as well capitalized as represented.

## THE TRUTH BEGINS TO COME TO LIGHT

53.    On January 20, 2009, Regions issued a press release entitled "Regions Reports Fourth Quarter 2008 Loss Largely Driven by Non-cash Goodwill Impairment Charge," which stated in part:

- Loss of $9.01 diluted share for the quarter ended December 31, 2008 was largely driven by a $6 billion non-cash charge for impairment of goodwill.

*    *    *

- Accelerated disposition of problem assets, with approximately $1 billion in non-performing assets sold or transferred to held for sale, resulting in approximately $479 million of losses

- Net loan charge-offs rose to an annualized 3.19 percent of average loans

- 14 -

- Increased loan loss provision to $1.150 billion, $354 million above net charge-offs; raised allowance for credit losses to 1.95 percent of loans

\*        \*        \*

The results of goodwill impairment testing at the end of the fourth quarter indicated that the estimated fair value of Regions' banking reporting unit was less than its book value . . . .

\*        \*        \*

During the fourth quarter, Regions either sold or transferred to held for sales approximately $1 billion of non-performing loans and foreclosed properties. Losses on those transactions, most of which was included in net charge-offs, totaled $479 million, driving the linked-quarter increase in net loan charge-offs.

\*        \*        \*

Total fourth quarter net loan charge-offs rose to $796 million, or to an annualized 3.19 percent of average loans, from third quarter's $416 million, or 1.68 percent.   Commercial real estate construction write-offs, primarily related to homebuilders and condominiums, drove the losses.

\*        \*        \*

Fourth quarter's provision for loan losses increased to $1.150 billion, $354 million above net charge-offs and $733 million higher than the third quarter. This increased provision raised the company's allowance for credit losses to 1.95 percent of loans, up 38 basis points linked quarter.  Continued declines in housing and residential-related construction project values, as well as rising unemployment, necessitated the reserve increase.

54.    On February 2, 2009, *Bloomberg* published an article entitled "Regions Declines After Moody's Downgrade on Defaults," which stated:

Regions Financial Corp., Alabama's biggest bank, fell 16 percent in New York trading after Moody's Investors Service downgraded the lender on the prospects of more borrower defaults in Florida.

"Regions has seen nearly a doubling of nonperforming assets over the past year, largely in the residential homebuilder and home-equity portfolios," Moody's said in a statement today on the Birmingham-based bank.

The bank dropped 54 cents to $2.92 at 4 p.m. in New York Stock Exchange composite trading and has plunged almost 90 percent in the past 12 months.

The debt rating was cut to A3 from A2 and may be dropped further, Moody's said.

55.     The price of the Securities dropped significantly as a result of these disclosures.

## COUNT I

### Violations of §11 of the 1933 Act
### Against All Defendants

56.     Plaintiff repeats and realleges each and every allegation contained above.

57.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants. For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

58.     The Registration Statement was false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

59.     Regions was the registrant for the Offering. As issuer of the Securities, Regions Trust III is strictly liable to plaintiff and the Class for the misstatements and omissions.

60.     The Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement. Each of the Individual Defendants signed or authorized the signing of the Registration Statement.

61.     The Underwriter Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

62.     E&Y acted as Regions' auditor and was named by consent as having certified a part of the Registration Statement.

63.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

64.     The Registration Statement was false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

65.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

66.     Plaintiff acquired the Securities pursuant and/or traceable to the Registration Statement.

67.     Plaintiff and the Class have sustained damages. At the time of their purchases of the Securities, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint. Less than three years elapsed between the time that the Securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

### Violations of §12(a)(2) of the 1933 Act
### Against Defendants Regions, Regions Trust III and the Underwriter Defendants

68.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

69.     For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

70.     By means of the defective Prospectus, the defendants named herein assisted in the sale of the Securities to plaintiff and other members of the Class.

71.     The Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. The defendants named in this Count owed plaintiff and the other members of the Class who purchased the Securities pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

72.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time plaintiff acquired the Securities.

73.     By reason of the conduct alleged herein, these defendants violated §12(a)(2) of the 1933 Act. As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased the Securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the Securities. Accordingly, plaintiff and the other members of the Class who hold such Securities have the right to rescind and recover the consideration paid for their Securities, and hereby tender their Securities to the defendants sued herein. Class members who have sold their Securities seek damages to the extent permitted by law.

## COUNT III

### Violations of §15 of the 1933 Act
### Against the Individual Defendants

74.    Plaintiff repeats and realleges each and every allegation contained above.

75.    This Count is brought pursuant to §15 of the 1933 Act against the Individual Defendants. For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

76.    Each of the Individual Defendants was a control person of Regions by virtue of his or her position as a director, senior officer and/or major shareholders of Regions which allowed each of these defendants to exercise control over Regions and its operations.

77.    Each of the Individual Defendants was a culpable participant in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the Offering to be successfully completed.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action and certifying plaintiff as a Class representative;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding rescission or a rescissory measure of damages; and

E.    Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: April 1, 2009                COUGHLIN STOIA GELLER
                                      RUDMAN & ROBBINS LLP
                                    SAMUEL H. RUDMAN
                                    DAVID A. ROSENFELD


                                    SAMUEL H. RUDMAN

                                    58 South Service Road, Suite 200
                                    Melville, NY  11747
                                    Telephone:  631/367-7100
                                    631/367-1173 (fax)

                                    COUGHLIN STOIA GELLER
                                      RUDMAN & ROBBINS LLP
                                    DARREN J. ROBBINS
                                    MATTHEW P. MONTGOMERY
                                    655 West Broadway, Suite 1900
                                    San Diego, CA  92101
                                    Telephone:  619/231-1058
                                    619/231-7423 (fax)

                                    Attorneys for Plaintiff

- 20 -

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

Alfred ~~ALBERT~~ FAIT ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

Acquisitions:

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 4/25/08 | 600 | $25.00 (IPO) |
| | | |
| | | |

Sales:

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |
| | | |

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

REGIONS FINANCIAL PREFERRED "Z"

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21ˢᵗ day of _March_, 2009.

_Alfred Fait_
ALBERT FAIT
Alfred

- 2 -