# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

ALFRED FAIT, Individually and on Behalf of    :
All Others Similarly Situated,    :

    :

    Plaintiff,    :

    :  09 Civ. 3161 (LAK)

    -against-    :

    :  ECF Case

REGIONS FINANCIAL CORPORATION,    :
et al.,    :

    :

    Defendants.    :

--------------------------------------------------------- x

## THE REGIONS PARTIES' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

SULLIVAN & CROMWELL LLP
David B. Tulchin (DT 5557)
William J. Snipes (WS 3076)
Claire E. Hunter (CH 0531)
Florence J. Goal (FG 1002)
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

*Attorneys for Defendants Regions Financial Corporation, Regions Financing Trust III, C. Dowd Ritter, Samuel W. Bartholomew, Jr., George W. Bryan, David J. Cooper, Earnest W. Deavenport, Jr., Don DeFosset, James R. Malone, Susan W. Matlock, Charles D. McCrary, Claude B. Nielson, Jorge M. Perez, Lee J. Styslinger, III, Spence L. Wilson and John R. Roberts*

January 20, 2010

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ..............................................................................................................3

    I.    THE AMENDED COMPLAINT FAILS TO PLEAD ACTIONABLE
           MISREPRESENTATIONS ................................................................3

    II.    THE "BESPEAKS CAUTION" DOCTRINE APPLIES HERE.....................7

    III.    THE "CORRECTED" FIRST AMENDED COMPLAINT IS A
            NULLITY .................................................................................9

CONCLUSION...........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashcroft* v. *Iqbal*,
129 S. Ct. 1937 (2009) ........................................................................................3, 4

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007) .............................................................................................4

*City of Sterling Heights Police & Retirement Sys.* v. *Vodafone Group*,
No. 07 Civ. 9921, 2009 WL 1456846 (S.D.N.Y. May 20, 2009) ................................5

*DiLeo* v. *Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) .................................................................................7

*First Nationwide Bank* v. *Gelt Funding, Corp.*,
820 F. Supp. 89 (S.D.N.Y. 1993) ...........................................................................6

*First Nationwide Bank* v. *Gelt Funding, Corp.*,
27 F.3d 763 (2d. Cir. 1994) ..................................................................................6

*Halperin* v. *eBanker USA.com, Inc.*,
295 F.3d 352 (2d Cir. 2002)..................................................................................8

*Harris* v. *IVAX Corp.*,
998 F. Supp. 1449 (S.D. Fla. 1998) ........................................................................5

*Harris* v. *IVAX Corp.*,
182 F.3d 799 (11th Cir. 1999) ...............................................................................5

*Hinerfield* v. *United Auto Group*,
No. 97 Civ. 3533, 1998 WL 397852 (S.D.N.Y. July 15, 1998) .................................6

*In re BellSouth Corp. Sec. Litig.*,
355 F. Supp. 2d 1350 (N.D. Ga. 2005) ....................................................................5

*In re CIT Group, Inc. Sec. Litig.*,
349 F. Supp. 2d 685 (S.D.N.Y. 2004) .....................................................................6

*In re Merrill Lynch & Co.*, *Inc.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003) .....................................................................3

*In re NovaGold Resources*, *Inc. Secs. Litig.*,
629 F. Supp. 2d 272 (S.D.N.Y. 2009) .....................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

*In re Unicapital Corp. Sec. Litig.*,
    149 F. Supp. 2d 1353 (S.D. Fla. 2001) ..........................................................................5

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F. Supp. 2d 964 (N.D. Cal. 2009) ..........................................................................5

*In re Vivendi Universal, S.A. Sec. Litig.*,
    381 F. Supp. 2d 158 (S.D.N.Y. 2003) ..........................................................................5

*In re Washington Mutual, Inc. Sec. Litig.*,
    259 F.R.D. 490 (W.D. Wash. 2009) ..............................................................................6

*Rubin* v. *MF Global, Ltd.*,
    634 F. Supp. 2d 459 (S.D.N.Y. 2009) .......................................................................8, 9

*Shapiro* v. *UJB Financial Corp.*,
    964 F.2d 272 (3d Cir. 1992) ..........................................................................................7

*Shields* v. *Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ..........................................................................................7

### RULE

Fed. R. Evid. 201 ..............................................................................................................3

### STATUTES

15 U.S.C. § 77k ................................................................................................................2

15 U.S.C. § 77l .................................................................................................................2

15 U.S.C. § 77o ................................................................................................................2

# **TABLE OF AUTHORITIES**

**Page(s)**

OTHER

*Markets Lineup: Dow Jones Industrial Average,*
    Wall Street Journal, Mar. 10, 2009, at C4 ..................................................................5

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- x
ALFRED FAIT, Individually and on Behalf of    :
All Others Similarly Situated,                 :
                                               :
                        Plaintiff,             :
                                               :   09 Civ. 3161 (LAK)
                    -against-                   :
                                               :   ECF Case
REGIONS FINANCIAL CORPORATION,                 :
et al.,                                        :
                                               :
                        Defendants.            :
                                               :
-------------------------------------------------------- x
```

## THE REGIONS PARTIES' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendants Regions Financial Corporation ("Regions"), Regions Financing Trust III, and the directors of Regions (collectively, the "Regions Parties") submit this reply memorandum in support of their motion to dismiss the First Amended Complaint in this action.

## PRELIMINARY STATEMENT

This case is premised on the notion that, when Regions issued securities on April 28, 2008, it should have foreseen the financial catastrophe that occurred later that year. Based on 20–20 hindsight, plaintiff argues that Regions' April 2008 Registration Statement and Prospectus Supplement (the "Offering Documents") were false when issued because Regions, in valuing goodwill and providing for loan loss reserves, failed to anticipate the financial meltdown that later occurred. This is not sufficient to state a claim under Sections 11, 12(a) or 15 of the Securities Act of 1933

("1933 Act") (15 U.S.C. § 77k, 15 U.S.C. § 77l and 15 U.S.C. § 77o), all of which require that plaintiff allege that the Offering Documents contained statements that were false and misleading at the time they were made.[1]

The First Amended Complaint ("Amended Complaint" or "Am. Compl.") should be dismissed for three independent reasons. *First*, as the Regions Parties demonstrated in their October 27, 2009 Memorandum in Support of Their Motion to Dismiss the First Amended Complaint ("Regions Mem."), plaintiff's theory -- that, based on events that occurred after the April 2008 offering, Regions should have anticipated the financial crisis and adjusted its goodwill valuation and loan loss reserves before the securities were issued -- does not state a claim. Events after April 28, 2008 are irrelevant as a matter of law; goodwill valuation and loan loss reserves are matters of judgment, and those judgments must be evaluated as of the offering date. (Regions Mem. at 24-25.)

*Second,* plaintiff is incorrect that the alleged misstatements of goodwill and loan loss reserves are not immune from liability under the "bespeaks caution" doctrine. (Pl. Mem. at 41-45.) The risk disclosures and cautionary language that identify goodwill valuation and loan loss reserves as "estimates" in the Offering Documents put these statements squarely within coverage of that doctrine. (*See* Regions Mem. at 33.)

*Third,* the Amended Complaint should be dismissed because it was filed by Alfred Fait, not lead plaintiff Howard Rensin. Plaintiff's only argument in response is the assertion in a footnote that this defect was mooted by Rensin's later filing of a

---

[1]    The word "plaintiff" as used in this memorandum refers to lead plaintiff Howard Rensin. Curiously, the opposition brief (Plaintiffs' Consolidated Opposition to Defendants' Motion to Dismiss ("Pl. Mem.")) never indicates on whose behalf the brief was filed -- Rensin, Alfred Fait (who alone filed the First Amended Complaint on August 28, 2009) or unnamed others.

"corrected" First Amended Complaint.  (Pl. Mem. at 3, n.2.)  This does not help; the latter pleading is of no moment because it was filed after expiration of the time set by this Court for filing of an amended complaint.

## ARGUMENT

## I.    THE AMENDED COMPLAINT FAILS TO PLEAD ACTIONABLE MISREPRESENTATIONS

Regions' failure to predict the future in estimating goodwill and providing for loan losses is not actionable.  The allegation that events before the April 2008 offering should have been recognized as harbingers of the financial crisis to come (Am. Compl. ¶¶ 75-83, 86, 90-91, 93-97, 108; Pl. Mem. at 7-8, 19-20) is classic 20-20 hindsight.  As we have shown, neither the market nor the bigger world saw the coming "catastrophe."[2] (Regions Mem. at 16-18.)  In his opposition brief, Rensin concedes that the Court should "focus solely on events as of the April 2008 Offering."  (Pl. Mem. at 20.)  The Amended Complaint, however, relies on numerous events that occurred after April 2008, including

---

[2]    Plaintiff argues that the assertions in the Regions Parties' memorandum relating to the economic crisis in 2008 should be disregarded because they go beyond the scope of the allegations in the Amended Complaint.  (Pl. Mem. at 11-12.)  Of course, matters as to which judicial notice may be taken are appropriate to consider on a motion to dismiss.  *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 383 at n.3 (S.D.N.Y. 2003) (citations omitted).  And in deciding whether the claims in the Amended Complaint are plausible, the Court can and should take into consideration facts subject to judicial notice, just as the Supreme Court did in *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1951-52 (2009).  Here, just as in *Iqbal*, the record subject to judicial notice suggests obvious alternative explanations.

Pursuant to Federal Rule of Evidence 201, a Court may take judicial notice of facts "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  The unprecedented series of events in the financial markets in 2008 qualify under both prongs of this standard, and the news sources cited by the Regions Parties, including the *Wall Street Journal*, *The New York Times* and *Barron's*, are sources whose accuracy cannot reasonably be questioned in these respects.  Thus, it is appropriate for the Court to take judicial notice of the events in question.  Indeed, Rensin himself does not question the accuracy of the Regions Parties' description of these events.

the FDIC's July 2008 seizure of IndyMac Bank (Am. Compl. ¶ 112), the September 2008

U.S. government's seizure of Fannie Mae and Freddie Mac (*id*. ¶ 115), sale of Merrill

Lynch, bankruptcy filing of Lehman Brothers (*id*. ¶ 116), and seizure of Washington

Mutual by regulators (*id*. ¶ 117).

   The Amended Complaint fails to allege facts known before the April 2008

offering sufficient to show that Regions should have predicted the unprecedented series

of economic events that occurred later in the year.  Of course, as this Court is well aware,

"mere conclusory statements" -- such as the hyperbolic allegation that "[b]y early 2008,

the mortgage meltdown was wildly out of control and bleeding into all financial markets"

(Pl. Mem. at 7) -- are insufficient.  *Ashcroft*, 129 S. Ct. at 1949.  There are no specific

allegations of fact that support such hyperbole.  In order to survive a motion to dismiss, a

complaint must plead "allegations plausibly suggesting (not merely consistent with)" an

"entitle[ment] to relief."  *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 545 (2007).  The

pre-offering financial events to which the Amended Complaint refers do not plausibly

support the assertion that the financial crisis should have been anticipated in April 2008.

Plaintiff cites to the closing of certain retail mortgage offices in May 2006 (Am. Compl.

¶ 76), bankruptcy filings of two subprime lenders and two mortgage lenders in 2006 and

2007 (*id*. ¶¶ 81, 86, 93, 94) and the March 16, 2008 announcement that Bear Stearns

would be acquired by J.P. Morgan in order to avoid bankruptcy (*id*. ¶ 108).  None of

these events were then recognized as signs of an "impending collapse" (Pl. Mem. at 1).

Even the day after the sale of Bear Stearns on March 16, 2008, the Dow Jones Industrial

Average closed up 21.16 points at 11,972.25 -- not too far from double the March 9, 2009

low point of 6,547.05 (Ex. P to Declaration of Claire E. Hunter, executed on October 27,

2009 ("Hunter Decl.") and *Markets Lineup: Dow Jones Industrial Average*, Wall Street Journal, Mar. 10, 2009, at C4) -- and Regions' price on the New York Stock Exchange rose from $19.50 on March 17 to $22.28 on April 28 (when the offering took place) (Hunter Decl. Ex. Q).

In the context of an acquisition, goodwill represents the expected future economic benefits from the combined entity. (Am. Compl. ¶ 146; Regions Mem. at 5-6.) The estimation of goodwill thus inherently reflects management's opinion based on projections about the company's expected future performance.[3] After goodwill is recorded for an acquisition, the acquiror must test for impairment annually or "more often when events or circumstances arise that indicate goodwill could be impaired." (Am. Compl. ¶ 147.) Plaintiff concedes that Regions found no goodwill impairment after testing at the very end of 2007, but argues that some impairment should have been taken based on his claim of "significant market disruption" in 2006 and 2007 (Pl. Mem. at 15). This amounts simply to *post hoc* criticism of management's judgment in making assumptions about the future performance of AmSouth's loan portfolio, not a

---

[3]    Plaintiff asserts that courts have "rejected numerous times" the argument that goodwill is a matter of judgment. (Pl. Mem. at 21.)  This is incorrect; that issue was not addressed in any of the cases cited by plaintiff.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964 (N.D. Cal. 2009); *In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350 (N.D. Ga. 2005); *In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353 (S.D. Fla. 2001).  Further, in each of these cases, plaintiff made fraud allegations with respect to goodwill.  *Id.*  In fact, courts have consistently ruled that goodwill is a matter of judgment.  *See, e.g.*, *Harris* v. *IVAX Corp.*, 998 F. Supp. 1449, 1453 (S.D. Fla. 1998) ("The decision not to factor in the goodwill writeoff . . . was also necessarily forward-looking; it reflected the judgment of the corporation that goodwill was strong and that no such writeoff would be necessary"), aff'd, 182 F.3d 799 (11th Cir. 1999); *City of Sterling Heights Police & Retirement Sys.* v. *Vodafone Group*, No. 07 Civ. 9921, 2009 WL 1456846, at *7 (S.D.N.Y. May 20, 2009) (dismissing Section 10(b) claims pertaining to goodwill valuation where "the impairment charge was contingent on the company's judgment about future events and its likely future income").

misstatement of facts that were known when the offering was made.[4]

Similarly, the estimation of loan loss reserves necessarily reflects management's prediction about future loan losses. *First Nationwide Bank* v. *Gelt Funding, Corp.*, 820 F. Supp. 89, 95 (S.D.N.Y. 1993) ("the taking of loan loss reserves is based on managerial guesswork about the future"), *aff'd*, 27 F.3d 763 (2d Cir. 1994). Plaintiff cites a single decision from a district court in Washington to support his claim that errors in estimating loan loss reserves are actionable under Sections 11 and 12(a) (Pl. Mem. at 24).[5]  That decision runs counter to (i) Judge Sprizzo's decision in *In re CIT Group*, *Inc*. *Sec*. *Litig.*, 349 F. Supp. 2d 685, 689 (S.D.N.Y. 2004) (statements of loan loss reserves are "not actionable under the securities laws if they simply represented a failure on the part of defendants to correctly gauge the adequacy of the loan loss reserves"); (ii) Judge Patterson's decision in *Hinerfield* v. *United Auto Group*, No. 97 Civ. 3533, 1998 WL 397852, at *7 (S.D.N.Y. July 15, 1998) ("failure to anticipate the extent of necessary reserves" is not actionable "even if it amounts to mismanagement");

---

[4]    The SEC's comment letter (Pl. Mem. at 16-17) does not help plaintiff.  The SEC's comments relating to SFAS No. 142 sought additional disclosure for future filings only; it did not require restatement or amendment of past filings or changes to the amount of goodwill recognized at that time.

[5]    In *In re Washington Mutual*, *Inc. Sec. Litig.*, 259 F.R.D. 490 (W.D. Wash. 2009) plaintiffs made concrete allegations, based on the statements of several former bank employees, that WaMu's "under-provisioning" was the product of affirmative steps taken by management to increase loan volume in contravention of the company's internal risk guidelines.  259 F.R.D. at 496.  The complaint alleged that management misstated facts by (1) falsely assuring investors the bank "had been tightening underwriting" to deal with the softening housing market; and (2) because the bank's loan provisions did not account for its increased credit risks.  *Id*. at 497.  In contrast to Rensin's conclusory arguments, plaintiffs in *In re Wash. Mut.* "explain[ed] how the loan-related misconduct alleged throughout the complaint caused the financial misstatements . . . ."  *Id*. at 507.  Here, the Amended Complaint alleges that Regions' management got its reserve and goodwill analyses wrong but alleges no intentional misconduct of any kind; plaintiff instead challenges management's judgment about the risks of its loan portfolio.  Indeed, in stark contrast to *In re Wash. Mut.*, plaintiff admits his claims allege negligence, not active misconduct (Pl. Mem. at 14).

and (iii) the Third Circuit's holding in *Shapiro* v. *UJB Fin. Corp.,* 964 F.2d 272, 282 (3d Cir. 1992) (in the absence of fraud, a claim that loan loss reserves "were not maintained at an adequate level . . . is plainly an allegation of inactionable mismanagement").

        Other courts have reached the same conclusion in cases involving fraud allegations under Section 10(b).  In *Shields* v. *Citytrust Bancorp*, *Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994), the Second Circuit held that "misguided optimism [in setting loan loss reserves] is not a cause of action," rejecting a Section 10(b) claim alleging that defendant "should have known" earlier of weaknesses in its loan portfolio.  *Id*.  Similarly, the Seventh Circuit affirmed dismissal of a Section 10(b) claim that loan loss reserves were not "increase[d] . . . fast enough."  *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990).  There can be no legitimate dispute that estimation of loan loss reserves is inherently judgmental, requiring management to form opinions on the likelihood that borrowers will re-pay loans.  Allegations that management's estimates were overly optimistic -- based on later unanticipated events -- fail to state a claim.

## II.    THE "BESPEAKS CAUTION" DOCTRINE APPLIES HERE

        Rensin argues that that the "bespeaks caution" doctrine does "not immunize defendants from liability" because the estimates of goodwill and loan loss reserves "(1) lack sufficient cautionary language, and (2) the future risks supposedly cautioned against already existed."  (Pl. Mem. at 43.)[6]  Plaintiff ignores the fact that the

---

[6]     It is not correct that, as plaintiff asserts, defendants concede that they did not consider loan loss reserves or goodwill to be 'forward looking statements' in the Offering materials." (Pl. Mem. at 43, n.25, citing Regions Mem. at 33.)  The Regions Parties made no such concession but merely noted that goodwill and loan loss reserves were not "expressly identified" as forward-looking statements in the Offering Documents, something not required for the statements to *be* forward looking.  (Regions Mem. at 33.)

Offering Documents state explicitly that forward-looking statements may be identified by words such as "believe," "expect," "anticipate," "project," and "other similar expressions." (Regions Mem. at 33, quoting Prospectus Supplement, Hunter Decl. Ex. B at S-iv; 2007 10-K, Hunter Decl. Ex. C. at 2.) Because the 2007 10-K says that both goodwill and loan loss reserves are management "estimates" (Hunter Decl. Ex. C at 29, 87), it makes clear that these numbers reflect management's subjective belief. As a result, the 2007 10-K effectively designates them as forward-looking statements, which are immaterial as a matter of law under the "bespeaks caution" doctrine because they are so inherently subjective that a reasonable investor would not "'consider them important in light of adequate cautionary language' in the relevant offering." *Rubin* v. *MF Global, Ltd.*, 634 F. Supp. 2d 459, 467 (S.D.N.Y. 2009) (citing *Halperin* v. *eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002)); *see also* Regions Mem. at 32-33.

       Rensin is also incorrect in arguing that the risk disclosures regarding goodwill and loan loss reserves in Regions' 2007 10-K "simply provide a litany of general risks." (Pl. Mem. at 43.) In fact, the risk disclosures are specific and relate to the very factors that caused Regions to write-down goodwill and increase loan loss reserves in January 2009. (*See* Regions Mem. at 14-15.) For example, in the April 2008 Prospectus Supplement, Regions disclosed that certain of management's estimates were based on (i) "Regions' ability to achieve the earnings expectations related to [the acquisition of ] AmSouth;" (ii) "continued growth of the markets that [AmSouth] serve[s];"[7] (iii) "[p]ossible changes in the creditworthiness of customers;" and (iv) "the

---

[7]    All agree that Florida was one of the principal AmSouth markets. (*See, e.g.*, Am. Compl. ¶ 4.)

possible impairment of collectibility of loans." (Regions Mem. at 15, quoting Hunter Decl. Ex. B at S-iii.) Failure of the AmSouth loan portfolio to perform at anticipated levels is precisely the reason plaintiff identifies for the supposed over-valuation of goodwill and underestimation of loan loss reserves. (*See* Am. Compl. ¶ 154.) In light of Regions' disclosure about the uncertainty surrounding the AmSouth loan portfolio and the inherently cautionary description of goodwill and loan loss reserves as management "estimates," the alleged misstatements are forward-looking statements and thus immune from liability as a matter of law. *In re NovaGold Resources*, *Inc. Secs. Litig.*, 629 F. Supp. 2d 272, 294 (S.D.N.Y. 2009); *Rubin*, 634 F. Supp. 2d at 467.[8]

## III.    THE "CORRECTED" FIRST AMENDED COMPLAINT IS A NULLITY

On June 30, 2009, the Court appointed Howard Rensin, not Fait, as lead plaintiff and authorized Rensin, not Fait, to file an amended complaint within 60 days of that order. (Hunter Decl. Ex. E.) Rensin did nothing within the allotted time; Fait (who had no authority to do so) filed his First Amended Complaint on August 28, 2009. (Hunter Decl. Ex. A; Regions Mem. at 22-23.) Plaintiff concedes these facts but now, buried in a footnote, claims they have "been rendered moot" by Rensin's November 2, 2009 filing -- which was untimely and was filed without leave of the court or defendants' consent. (Pl. Mem. at 3, n.2.)

The Court's April 28, 2009 scheduling order gave Mr. Rensin 60 days after his appointment as lead plaintiff on June 30, 2009 to file an amended complaint,

---

[8]    This also disposes of plaintiff's one sentence argument against the application of the PSLRA's safe harbor for forward-looking statements (Pl. Mem. at 44, n.26). As demonstrated in the Regions Parties' opening brief, statements about goodwill and loan loss reserves were included within the types of statements classified as forward-looking in the Offering Documents (Regions Mem. at 32-33).

(*i.e.* until August 31, 2009).  (Order, April 28, 2009, Hunter Decl. Ex DD; Order, June

30, 2009, Ex. E.)  The only explanation offered in the opposition brief is "scrivener's

errors" concerning the identity of plaintiff.  (Pl. Mem. at 3, n.2.)  This does not relieve

plaintiff of the requirement to file within the required time, and he never sought leave to

make an untimely filing.

<u>**CONCLUSION**</u>

The Amended Complaint should be dismissed with prejudice.

Dated:    New York, New York
          January 20, 2010

Respectfully submitted,

s/ David B. Tulchin

David B. Tulchin (DT 5557)
William J. Snipes (WS 3076)
Claire E. Hunter (CH 0531)
Florence J. Goal (FG 1002)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000
tulchind@sullcrom.com
snipesw@sullcrom.com
hunterc@sullcrom.com
goalf@sullcrom.com

*Attorneys for Defendants Regions
Financial Corporation, Regions
Financing Trust III, C. Dowd Ritter,
Samuel W. Bartholomew, Jr., George W.
Bryan, David J. Cooper, Earnest W.
Deavenport, Jr., Don DeFosset, James R.
Malone, Susan W. Matlock, Charles D.
McCrary, Claude B. Nielson, Jorge M.
Perez, Lee J. Styslinger, III, Spence L.
Wilson and John R. Roberts*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2010, I electronically filed the

foregoing document with the Clerk of Court by using the CM/ECF system, which will

automatically send a notice of electronic filing to the following:

Samuel Rudman, Esq.
David Rosenfeld, Esq.
COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747

Darren Robbins, Esq.
Matthew Montgomery, Esq.
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101

Scott A. Edelman, Esq.
Douglas W. Henkin, Esq.
MILBANK, TWEED, HADLEY &
McCLOY LLP
One Chase Manhattan Plaza
New York, NY 10005

Stanley Parzen, Esq.
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL  60606


   s/ Claire E. Hunter
Claire E. Hunter (CH 0531)
Sullivan & Cromwell LLP
125 Broad St.
New York, New York 10004-2498
(212) 558-4000
hunterc@sullcrom.com