UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

ALFRED FAIT, Individually and on Behalf )
of All Others Similarly Situated,        )
                                         )
                                         )   No. 09-CV-3161 (LAK)
                    Plaintiff,           )   ECF Case
                                         )
         v.                              )
                                         )
REGIONS FINANCIAL CORPORATION, )
et al.,                                  )
                                         )
                    Defendants.          )
                                         )
_____

# REPLY MEMORANDUM IN SUPPORT OF
# ERNST & YOUNG LLP'S MOTION TO DISMISS

Mauricio A. España                    Stanley J. Parzen
MAYER BROWN LLP                       John J. Tharp, Jr.
1675 Broadway                         James C. Schroeder
New York, New York 10019-5820         J. Bishop Grewell
(212) 506-2500                        MAYER BROWN LLP
                                      71 S. Wacker Dr.
                                      Chicago, IL  60606
January 20, 2010                      (312) 782-0600

# TABLE OF CONTENTS

**Page**

I. Claims Based, As Here, On An Auditor's Opinions Must Allege Subjective Falsity ............ 1

    A. Plaintiff Fundamentally Misunderstands GAAP And GAAS ......................................... 1

    B. E&Y's Reports Involve Matters Of Judgment And Opinion........................................... 4

II. The Complaint's Allegations Do Not Satisfy The Subjective Falsity Standard...................... 6

III. Even If Subjective Falsity Does Not Apply, The Claim Against E&Y Cannot Stand............ 9

CONCLUSION................................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Acceptance Ins. Sec. Litig., In re*, 423 F.3d 899 (8th Cir. 2005) .................................................4, 10

*AOL Time Warner Sec. Litig., In re*, 381 F. Supp. 192 (S.D.N.Y. 2004) ......................................4, 9

*Bily v. Arthur Young*, 834 P.2d 745 (Cal. 1992) ...........................................................................2, 3

*Bolt v. Merrimack Pharms.*, 503 F.3d 913 (9th Cir. 2007) ................................................................2

*Burlington Coat Factory Sec. Litig., In re*, 114 F.3d 1410 (3d Cir. 1997) .......................................2

*Cartoon Network v. CSC*, 536 F.3d 121 (2d Cir. 2008)....................................................................6

*City of St. Clair v. Inland Western*, 635 F. Supp. 2d 783 (N.D. Ill. 2009) ...................................4, 6

*City of Sterling Heights v. Vodafone*, 2009 WL 1456846 (S.D.N.Y. May 20, 2009) ..................5, 9

*Credit Suisse First Boston Corp., In re*, 431 F.3d 36 (1st Cir. 2005)................................................6

*Deephaven v. Grant Thornton*, 454 F.3d 1168 (10th Cir. 2006) ..............................................2, 3, 9

*Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) .................................................................................9

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990).....................................................................9

*Endo v. Arthur Andersen*, 163 F.3d 463 (7th Cir. 1999) ..................................................................3

*First Nationwide Bank v. Gelt Funding*, 820 F. Supp. 89 (S.D.N.Y. 1993), *aff'd*, 27 F.3d
    763 (2d Cir. 1994).......................................................................................................................4

*Freedman v. Value Health*, 958 F. Supp. 745 (D. Conn. 1997) ....................................................6, 7

*IBM Corp. Sec. Litig., In re*, 163 F.3d 102 (2d Cir. 1998) ................................................................7

*IKON, In re*, 277 F.3d 658 (3d Cir. 2002) .........................................................................................3

*Lapin v. Goldman Sachs*, 506 F. Supp. 221 (S.D.N.Y. 2006) ...........................................................7

*Lerner v. FNB*, 841 F. Supp. 97 (W.D.N.Y. 1993)...........................................................................9

*Loral Sec. Litig., In re*, 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ...............................................5

*Lovelace v. Software Spectrum*, 78 F.3d 1015 (5th Cir. 1996).........................................................3

# TABLE OF AUTHORITIES
## (Continued)

                                                                                                                    **Page(s)**

*McKesson Sec. Litig., In re*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ............................................ 7

*Monroe v. Hughes*, 31 F.3d 772 (9th Cir. 1994) ............................................................................ 10

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) .......................................................................... 10

*Rosen v. Textron*, 321 F. Supp. 2d 308 (D.R.I. 2004) .................................................................... 9

*Salomon, In re*, 350 F. Supp. 2d 477 (S.D.N.Y. 2004), *reconsideration denied*, 373 F. Supp. 2d 248 (S.D.N.Y. 2005) ............................................................................................ 6, 7

*Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 115 S. Ct. 1232 (1995) ........................................ 2

*Shapiro v. UJB Fin.*, 964 F.2d 272 (3d Cir. 1992) ......................................................................... 5

*Sloane Overseas Fund v. Sapiens Int'l*, 941 F. Supp. 1369 (S.D.N.Y. 1996) ................................ 3

*Stumpf v. Garvey*, 2005 WL 2127674 ............................................................................................ 6

*Thor Power v. Comm'r*, 439 U.S. 522, 99 S. Ct. 773 (1979) ......................................................... 2

*Van Wagoner Funds, In re*, 382 F. Supp. 2d 1173 (N.D. Cal. 2004) ........................................... 10

*Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 111 S. Ct. 2749 (1991) ........................... passim

*Washington Mut. Sec. Litig., In re*, 2009 WL 3517630 (W.D. Wash. Oct. 27, 2009) .................... 4

*Washington Mut. Sec. Litig., In re*, 259 F.R.D. 490 (W.D. Wash. 2009) ....................................... 4

*Wells Fargo Sec. Litig., In re*, 12 F.3d 922 (9th Cir. 1993) ........................................................... 5

**STATUTES**

15 U.S.C. § 77k(a)(4) ....................................................................................................................... 3

15 U.S.C. § 77k(b)(3)(B) ................................................................................................................. 7

Two things are especially notable about plaintiff's brief. First, he cites no facts showing that E&Y knew or believed in advance that the economy would almost collapse in the latter half of 2008, wreaking havoc on the finances of banks across the country—which adversely affected Regions' loan loss reserves and goodwill. E&Y is an accounting firm that reports on the financial statements on a certain date, not a seer predicting the future after that date. Second, plaintiff has not fulfilled his promise to plead that defendants' judgments regarding Regions' financial statements were knowingly wrong or not believed (E&Y Br. 1-2); instead, he offers unpersuasive reasons why he need not allege either that the judgments were not subjectively believed or a factual basis for asserting that defendants believed their judgments were false. As explained below, evaluations of loss reserves and goodwill involve matters of opinion; *Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 111 S. Ct. 2749 (1991), requires plaintiff to allege subjective falsity for claims involving opinions; and plaintiff has not met that standard here—especially since he does not allege that specific Regions loans were impaired at year-end 2007.

**I.     Claims Based, As Here, On An Auditor's Opinions Must Allege Subjective Falsity.**

   **A.     Plaintiff Fundamentally Misunderstands GAAP And GAAS.**

Plaintiff's argument that E&Y's audit report did not concern matters of opinion rests on a profound misunderstanding of what auditors do.[1] He contends "compliance with GAAP is a statement of fact" because it supposedly "involve[s] objective accounting assessments governed by a rigorous set of defined standards." Pl. Br. 4, 37. That is not true, especially given the allegations about loss reserves and goodwill, both of which require the exercise of professional judgment to express an opinion on whether the accounting satisfies GAAP. See pp. 4-6, 8, *infra*.

---

[1]   Plaintiff regularly refers to "defendants," refusing to acknowledge that an auditor is different from the company whose financial statements are audited. For example, E&Y did not opine on (and was not required to opine on) Regions' "internal 'Critical Accounting Policies.'" Pl. Br. 19. And, as explained before (E&Y Br. 10-11), financial statements are prepared by the company's management; the auditor's role is to express an opinion on those statements taken as a whole.

As recognized by a case plaintiff cites, "GAAP is not a set of rigid rules." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1421 n.10 (3d Cir. 1997) (Alito, J.). Accord *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 101, 115 S. Ct. 1232, 1239 (1995) ("GAAP is not [a] lucid or encyclopedic set of pre-existing rules"). Rather, GAAP "is *often indeterminate*." *Id*. (emphasis added). Contrary to the impression plaintiff gives, "[f]inancial accounting is *not a science*. It addresses many questions as to which the answers are *uncertain* and is a 'process [that] involves *continuous judgments and estimates*.'" *Id*. at 100, 115 S. Ct. at 1239 (emphasis added). See also *Deephaven v. Grant Thornton*, 454 F.3d 1168, 1175 (10th Cir. 2006) (an audit report "is stated as an opinion…rather than a statement of absolute fact or a guarantee").

GAAP is "far from being a canonical set of rules." *Thor Power v. Comm'r*, 439 U.S. 522, 544, 99 S. Ct. 773, 787 (1979). Plaintiff himself notes (at 39): "GAAP consist[s] of numerous pronouncements" and "statements"; "countless…Opinions" and "Interpretations"; and many "additional standards." In short, "GAAP consists of a hodgepodge of accounting sources." *Bolt v. Merrimack Pharms.*, 503 F.3d 913, 917 n.6 (9th Cir. 2007). There are "19 different GAAP sources, any number of which might present conflicting treatments of a particular accounting question." *Shalala*, 514 U.S. at 101, 115 S. Ct. at 1239. A typical audit report is "based on the auditor's interpretation and application of hundreds of professional standards, many of which are broadly phrased and readily subject to different constructions"—requiring auditors to exercise "complex professional judgment." *Bily v. Arthur Young*, 834 P.2d 745, 763 (Cal. 1992). And "'[t]he lack of an official compilation allows for some debate over whether particular announcements are encompassed within GAAP.'" *Burlington*, 114 F.3d at 1421 n.10.

As a result, GAAP "tolerate[s] a range of 'reasonable' treatments, leaving the choice among alternatives to management." *Thor Power*, 439 U.S. at 544, 99 S. Ct. at 787. GAAP encompasses "a wide range of acceptable procedures, such that 'an ethical, reasonably diligent

2

accountant may choose to apply any of a variety of acceptable accounting procedures'" to a financial statement. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1021 (5th Cir. 1996). There is "discretion and judgment on the part of the auditor at every stage," and "[u]sing different initial assumptions and approaches, different sampling techniques, and the wisdom of 20-20 hindsight, few CPA audits would be immune from criticism." *Bily*, 834 P.2d at 763. Even a "properly conducted audit" may not detect GAAP violations. *Sloane Overseas Fund v. Sapiens Int'l*, 941 F. Supp. 1369, 1381 (S.D.N.Y. 1996). Accord *In re IKON*, 277 F.3d 658, 673 (3d Cir. 2002).

Plaintiff wrongly states that "E&Y *certified* Regions' 2007 financial statements and management's attestations regarding…internal controls." Pl. Br. 35 (emphasis added). As shown by the E&Y reports the complaint quotes, E&Y did not "certify" anything; its reports *don't* have the words "certify" or "certification." Rather, E&Y "'express[ed] an opinion…based on our audit.'" Cmplt. ¶¶ 23-24 (quoting E&Y's reports).[2] Because E&Y did not "certif[y] any report" or "part of the registration statement" prepared by Regions, E&Y is responsible only for the "report[s]" it "prepared." 15 U.S.C. § 77k(a)(4); *Endo v. Arthur Andersen*, 163 F.3d 463, 466 (7th Cir. 1999) ("an accountant's liability for misleading representations in a registration statement is limited to the portion of any financial statements 'which purports to have been prepared or certified by him'") (quoting § 77k(a)(4)). "[A]uditors do not 'certify' a company's financial statements in the sense that they 'guarantee' or 'insure' them. Nor do they, by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein." *Deephaven*, 454 F.3d at 1174 (cites omitted). Thus, E&Y cannot be liable for the underlying financial statements prepared by Regions. Pl. Br. 35-37. In any event, Regions' statements on

---

[2]  That the "precise wording" of audit reports "varies little" (Pl. Br. 39 n.22) does not show that they are factual in nature. The "form and content of an audit report are determined" by GAAS, *Deephaven*, 454 F.3d at 1170 n.1, which makes clear that auditors express an "opinion"—GAAS does not provide that auditors "certify" the financial statements in any way. See AU § 508.08.

3

loss reserves and goodwill are opinions requiring subjective falsity allegations. See *infra*.

      **B.**      **E&Y's Reports Involve Matters Of Judgment And Opinion.**

Given the degree of professional judgment involved in interpreting GAAP and performing audits under GAAS, both loss reserves and goodwill involve matters of opinion; as a result, the allegations here are governed by the subjective falsity test. E&Y Br. 5-6, 11-13.

Plaintiff does not dispute that setting loss reserves involves "managerial guesswork about [a company's] future economic fortune." *First Nationwide Bank v. Gelt Funding*, 820 F. Supp. 89, 95 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994); *In re Acceptance Ins. Sec. Litig.*, 423 F.3d 899, 902 (8th Cir. 2005) ("reserve figures [a]re estimates of future contingencies" and require "some speculation"). He ignores a recent opinion holding that because auditor reports involve "opinion," the complaint must allege subjective falsity "with particularity" under *Virginia Bankshares*. See *City of St. Clair v. Inland Western*, 635 F. Supp. 2d 783, 793 (N.D. Ill. 2009). Instead, he cites a court which held that although evaluating loss reserves "requires some exercise of judgment," *In re Washington Mut. Sec. Litig.*, 259 F.R.D. 490, 507 (W.D. Wash. 2009), *Virginia Bankshares* does not apply because GAAP involves "statement[s] of fact," *In re Washington Mut. Sec. Litig.*, 2009 WL 3517630, *22 (W.D. Wash. Oct. 27, 2009). That decision is wrong. First, as discussed, E&Y is subject to potential liability only for its opinion on the financial statements, not the financial statements themselves. Second, as already shown, GAAP involves matters of opinion, not fact. Third, to support its specific conclusion, *WaMu* cited only *In re AOL Time Warner Sec. Litig.*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004), which *WaMu* (at *21) described as holding that the subjective falsity standard did not apply to audit reports. *AOL* held no such thing; it did not discuss that issue at all, nor did the auditor raise it. Instead, *AOL* held that the § 11 claims against the auditor "'sound in fraud'" and thus must comply with Rule 9(b), a burden the plaintiff "satisfied" in *AOL*, 381 F. Supp. 2d at 237, but has not tried to meet here.

4

Plaintiff also cites (at 24-25) *In re Wells Fargo Sec. Litig.*, 12 F.3d 922 (9th Cir. 1993), and *Shapiro v. UJB Fin.*, 964 F.2d 272 (3d Cir. 1992), but they support our position, not plaintiff's. Both indicate that loss reserves involve opinions and hold that *Virginia Bankshares* applies to claims based on loss reserves. *Wells Fargo*, 12 F.3d at 927 (noting that "the setting of loan loss reserves is…an 'art and not a science'"); *Shapiro*, 964 F.2d at 281-83 ("[t]here appears to be no single method of evaluating and setting loan loss reserves," which involve "judgments" that "can be validated only at some future date"). Indeed, *Shapiro* upheld the dismissal of allegations that the defendants did not disclose that the bank would have to increase its reserves in the future—there is no liability for "essentially failing to predict the future." 964 F.2d at 283.

Plaintiff asserts (at 4) that goodwill is "clearly different from loan loss reserves" because "there is nothing predictive or forward-looking about it." The complaint (¶ 146) says otherwise:

> "Goodwill is…an asset because *future* economic benefits are expected from it in combination with the *future* benefits of the other assets acquired in the acquisition. Goodwill is intended to reflect the going concern value of the business acquired and its *expected* contribution to *future* earnings growth." (Emphasis added.)

Evaluating the value attributed to those future benefits involves opinion and judgment. E&Y Br. 13; *City of Sterling Heights v. Vodafone*, 2009 WL 1456846, *6-7 (S.D.N.Y. May 20, 2009) (dismissing claim based on goodwill impairment; agreeing that a charge for goodwill impairment is "contingent on the company's judgment about future events and its likely future income"— "'[w]hen the impairments became so severe as to require specific accounting charges, and whether…the accounting principles were satisfied, necessarily involved issues of judgment'") (quoting *In re Loral Sec. Litig.*, 2004 WL 376442, *16-18 (S.D.N.Y. Feb. 27, 2004)).

According to plaintiff (at 21), the argument that "the accounting assessment of goodwill requires 'matters of judgment'…has been rejected numerous times." Not so. He ignores *Sterling Heights* and *Loral*, both from this District, and the cases he cites don't stand for that proposition:

5

those parties did not address whether goodwill impairment involves judgment, much less an opinion subject to the subjective falsity test, and the courts said nothing about those points. Thus, they are not precedent on the issue. "'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'" *Cartoon Network v. CSC*, 536 F.3d 121, 129 (2d Cir. 2008).

E&Y's reports were opinions that involved complex professional judgment. Contrary to plaintiff's view (at 3), E&Y does not claim to be exempt from § 11 liability. But no such claim is viable unless the allegations satisfy *Virginia Bankshares*' subjective falsity standard for opinions.

## II.     The Complaint's Allegations Do Not Satisfy The Subjective Falsity Standard.

Under the subjective falsity standard of *Virginia Bankshares*,

> [i]t is *not sufficient…to allege that an opinion was unreasonable*, irrational, excessively optimistic, not borne out by subsequent events, or any other characterization that relies on hindsight or falls short of an identifiable gap between the opinion publicly expressed and the opinion truly held.

*In re Salomon*, 350 F. Supp. 2d 477, 489 (S.D.N.Y. 2004) (emphasis added), *reconsideration denied*, 373 F. Supp. 2d 248 (S.D.N.Y. 2005). "Although in the typical case falsity and scienter are different elements, in a false statement of opinion case the two requirements are essentially identical"—an opinion "cannot be false at all unless the speaker is knowingly misstating his truly held opinion." *Id.* at 490; accord *In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 48 (1st Cir. 2005); *Stumpf v. Garvey*, 2005 WL 2127674, *15 & n.20, *17 (D.N.H. Sept. 2, 2005). Thus, subjective falsity requires allegations of intentional or reckless misstatements. *Freedman v. Value Health*, 958 F. Supp. 745, 753 (D. Conn. 1997); *St. Clair*, 635 F. Supp. 2d at 793.

Plaintiff argues for a different pleading test for scienter, citing cases that do not deal with the issue. He claims that pleading the defendant's state of mind is not required because opinions are "'actionable'" if the defendant "'does not…reasonably believe them.'" Pl. Br. 27 (quoting *In*

6

*re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998)). But *IBM* is a summary judgment case, and the quote is in *IBM*'s discussion of the *materiality* element of a § 10(b) claim—scienter was not at issue there. *Id*. at 106-07. Plaintiff also cites *Lapin v. Goldman Sachs*, 506 F. Supp. 2d 221, 239 (S.D.N.Y. 2006), which repeats *IBM*'s statement, but again, in a section on materiality. In the opinion's *next* section, *Lapin* addresses scienter, holding that it must be shown by "conscious misbeheavior or recklessness" (*id*. at 241)—far more than being "unreasonable."

Plaintiff also asserts (at 29) that *Virginia Bankshares* "did not rely upon a single item that bore on the defendants' subjective beliefs." In fact, the Supreme Court relied on circumstantial evidence that the statement was "a false expression of the directors' reasons"—that the defendants lied, making a statement "know[ing]" they "did not hold the beliefs or opinions expressed." 501 U.S. at 1090, 1094, 111 S. Ct. at 2757, 2759; *id*. at 1095, 111 S. Ct. at 2759 (a "statement of belief" is "open to objection only" if it is "knowingly false or misleadingly incomplete" because it "misstate[s]…the psychological fact of the speaker's belief in what he says"). If pleading that the defendant did not "reasonably believe" its opinions (Pl. Br. 27) were enough, professionals offering opinions could be liable for mere negligence, which would be inconsistent with *Virginia Bankshares*. *Salomon*, 350 F. Supp. 2d at 489-90; *Freedman*, 958 F. Supp. at 752-53; *In re McKesson Sec. Litig.*, 126 F. Supp. 2d 1248, 1265 (N.D. Cal. 2000).[3]

The complaint does not allege any facts showing that E&Y knowingly or recklessly misstated its true opinion. Plaintiff notes that in mid-2008, goodwill exceeded the stock value by $3.9 billion. Pl. Br. 17. But the SEC raised a question about this and was evidently satisfied with

---

[3] Subjective falsity is not part of the affirmative defense that auditors had "reasonable ground to believe" their opinions, 15 U.S.C. § 77k(b)(3)(B). Pl. Br. 5, 33-34. As explained, subjective falsity is different from an unreasonable opinion. Plaintiff confuses pleading falsity with avoiding an affirmative defense. Whether an opinion was false as of a certain date is different from whether someone had a reasonable basis to believe it was right on that date; the former is an element of a § 11 claim (not pled here), while the latter relates to potential affirmative defenses. Without subjective falsity, there is no material misstatement or omission at all.

7

Regions' answer. Regions' Br. 19; Cmplt. ¶ 111. Plaintiff never explains why it was reckless for E&Y to agree with the SEC, or mention that the SEC did *not* require Regions to restate or amend its financial statements. Nor does he dispute that disagreements about a write-off's timing—all this case involves—are nonactionable business judgment claims. E&Y Br. 22.

Plaintiff cites no specific loans that Regions held—their claims rest on statements about Florida real estate as a whole, the state of the economy, and the overall level of Regions' loss reserve. Pl. Br. 6-8, 19-23, 27-28. But they offer no factual basis for alleging that the reserve in the aggregate was wrong. Moreover, allegations about specific loans are required to state a claim that E&Y issued a subjectively false opinion about Regions' financial statements.

Plaintiff says Regions had to increase loss reserves under FAS Nos. 114 and 5. Cmplt. ¶¶ 169-79. But both require evidence that particular loans will probably not be repaid. FAS No. 114 says a specific loan is not "'impaired'" unless "'it is probable'" that the bank "'will be unable to collect all amounts due.'" *Id*. ¶ 169 (quoting FAS No. 114 ¶ 8). Under FAS No. 5, a loss is accrued if loans "'have specific characteristics that indicate that there would be probable loss in a group of loans with those characteristics'" (Cmplt. ¶ 174) *and* the "amount of loss can be reasonably estimated" (FAS No. 5 ¶ 8(b)). Further, accrual of "loss contingencies should be based on an evaluation of the facts in each particular case"—"[w]hether the amount of loss can be reasonably estimated" will normally depend on, *inter alia*, "information about the ability of individual debtors to pay." *Id*. ¶¶ 21-22. Reserves cannot be increased due to general economic conditions: "[g]eneral…business risks do not meet the conditions for accrual." *Id*. ¶ 14. In short, FAS Nos. 114 and 5 both depend on the circumstances of a bank's particular loans—facts entirely absent from this complaint—and require judgment in evaluating whether they apply.

Citing no cases involving loans, plaintiff argues (at 25) that allegations about specific loans are not needed. In fact, courts have long required such allegations to sustain claims based

8

on understated reserves. In *Denny v. Barber*, 576 F.2d 465, 467 (2d Cir. 1978), a suit against a bank and its auditor, plaintiffs challenged "the amounts reserved for loan losses," claiming some loans "had become 'increasingly risky'…without providing adequate reserves." Judge Friendly held the allegations insufficient because "there is no specification of what loans, at what times, and in what amounts were 'risky.'" *Id*. at 469. See *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990) (complaint did not "give examples of problem loans that E&W should have caught, or explain how it…should have recognized" that the reserves "were inaccurate"); *Lerner v. FNB*, 841 F. Supp. 97, 102-03 (W.D.N.Y. 1993) (complaint does not show why "defendants *must have known* that loan loss reserves were inadequate"—"*details* about specific delinquent loans" are "[n]oticeably absent"); *AOL*, 381 F. Supp. 2d at 243 (subjective falsity must be pled "'with particularity'"). Allegations about particular loans are likewise required for claims that goodwill was impaired due to poor loans. *Sterling Heights*, 2009 WL 1456846, *6 (complaint does not allege "which *specific losses known* to the Company should have triggered an impairment charge") (emphasis added); *Rosen v. Textron*, 321 F. Supp. 2d 308, 326-27 (D.R.I. 2004) (complaint does not "set forth in sufficient detail facts showing" that company knew 11 months earlier that a write-down of goodwill "was required, or that its estimated future cash flows" would be insufficient). Without allegations about Regions' actual loans and what E&Y learned about those loans during its audits, there is no basis to conclude that E&Y's "opinion was false or misleading in relation to the audits it performed." *Deephaven*, 454 F.3d at 1176.

Requiring allegations about specific loans not only comports with FAS, but if general allegations about the real estate market sufficed, a § 11 claim could be stated against every bank and auditor in the U.S. given the state of the economy in recent years. That would be absurd.

### III.   Even If Subjective Falsity Does Not Apply, The Claim Against E&Y Cannot Stand.

Plaintiff alleges no facts showing that E&Y made a factual misstatement at the time of its

9

audit reports; the complaint alleges only that *later* events show there was a problem that GAAP required to be fixed two years earlier. Pl. Br. 9-10, 28. But he provides no plausible basis for the theory that facts at the time showed the reserves were wrong or that anyone knew that the standards for increasing reserves or writing down goodwill had been met at the time—and no facts showing that anyone knew that (a) the world economy would almost melt down completely in the fall of 2008, or (b) Regions' 400% increase in reserves at year-end 2007 ("meager," plaintiff says, Pl. Br. 1) would not be enough. See E&Y Br. 17-23; *Acceptance Ins.*, 423 F.3d at 903 (dismissing § 11 claim involving a "retrospective analysis" of insurance loss reserves under FAS No. 5). An inability to predict the future does not violate the securities laws.

Plaintiff cites no case holding that auditors cannot use the bespeaks caution doctrine (Pl. Br. 44), nor is there any reason for such a rule. Under that doctrine, alleged misrepresentations are "'immaterial'" due to the offering's cautionary language. *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004). The same statements cannot be material as to one defendant and immaterial as to another—materiality is viewed from the investors' point of view, not the defendants'. The warnings here cover plaintiff's allegations. He argues (at 42) that reserves and goodwill are statements of historical fact, but both involve judgments about the future, as shown above. And if the warnings are "a litany of general risks" (Pl. Br. 43), they are the same "general risks" that plaintiff claims should have led to an earlier increase in reserves and decrease in goodwill.

The internal controls claim is tied to allegations about reserves and goodwill. Cmplt. ¶¶ 129, 139(f). If there is no claim based on loss reserves and goodwill, any claim based on internal controls fails as well. And *Monroe v. Hughes*, 31 F.3d 772 (9th Cir. 1994) (cited E&Y Br. 28), is still good law. *E.g.*, *In re Van Wagoner Funds*, 382 F. Supp. 2d 1173, 1182 (N.D. Cal. 2004).

## CONCLUSION

For the reasons set forth, the claim against E&Y should be dismissed with prejudice.

10

| | |
|---|---|
| January 20, 2010 | Respectfully submitted, |
| | |
| | s/ John J. Tharp, Jr. |
| Mauricio A. España | Stanley J. Parzen |
| MAYER BROWN LLP | John J. Tharp, Jr. |
| 1675 Broadway | James C. Schroeder |
| New York, New York 10019-5820 | J. Bishop Grewell |
| (212) 506-2500 | MAYER BROWN LLP |
| mespana@mayerbrown.com | 71 S. Wacker Dr. |
| | Chicago, IL  60606 |
| | (312) 782-0600 |
| | sparzen@mayerbrown.com |
| | jtharp@mayerbrown.com |
| | jschroeder@mayerbrown.com |
| | jgrewell@mayerbrown.com |

*Attorneys for Defendant Ernst & Young LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2010, I electronically filed the foregoing Reply Memorandum in Support of Ernst & Young LLP's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

s/ John J. Tharp, Jr.
John J. Tharp, Jr.
