'UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ALFRED FAIT,

        Plaintiff,

      -against-                           09 Civ. 3161 (LAK)

REGIONS FINANCIAL CORP., et al.,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

        Andrew J. Brown
        Eric I. Niehaus
        Lucas F. Olts
        Samuel H. Rudman
        David A. Rosenfeld
        COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
        *Attorneys for Plaintiff*

        David B. Tulchin
        William J. Snipes
        Claire E. Hunter
        Florence J. Goal
        SULLIVAN & CROMWELL LLP
        *Attorneys for the Regions Defendants*

        Stanley J. Parzen
        John J. Tharp, Jr.
        James C. Schroeder
        J. Bishop Grewell
        Mauricio A. Espana
        MAYER BROWN LLP
        *Attorneys for Defendant Ernst & Young LLP*

2

Lewis A. Kaplan, *District Judge.*

This is a purported class action for alleged violations of the Securities Act of 1933 (the "Securities Act") by a bank holding company, its subsidiary, its directors, its auditor, and the investment banks that underwrote its April 2008 offering of Trust Preferred Securities (the "Offering"). The amended complaint alleges that the registration statement and prospectus supplement for the offering (the "Offering Documents") were false and misleading because they incorporated by reference financial statements that overstated goodwill and underestimated loan loss reserves. The matter is before the Court on defendants' motions to dismiss for failure to state a claim upon which relief may be granted.

*Facts*

*The Parties*

Plaintiff Alfred Fait acquired Trust Preferred Securities pursuant or traceable to the Offering Documents.[1]  On April 1, 2009, he filed the initial complaint through Coughlin, Stoia, Geller, Rudman & Robbins LLP (the "Coughlin Firm").[2]  Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), this Court subsequently entered an order providing that a lead plaintiff could file an amended complaint within sixty days of his or her appointment.[3]

---

[1]    DI 34, Am. Cpt. ¶ 32.

[2]    DI 1.

[3]    The PSLRA sets out a procedure for appointing lead plaintiff in "each private action arising under the [Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 77z-1(a)(1). Once the lead plaintiff is appointed, he or she retains lead counsel subject to the court's approval. *Id.* §§ 77z-1(a)(3)(B)(v).

3

Howard M. Rensin, trustee, later filed a motion to be appointed lead plaintiff and for approval of the Coughlin Firm as lead counsel, which this Court granted on June 30, 2009.[4]  Rensin, however, took no further action.  Instead, on August 28, 2009, the Coughlin Firm filed the amended complaint on behalf of Fait, incorrectly asserting that Fait had been appointed lead plaintiff.[5]

Defendants argue that Fait's amended complaint is a nullity because Fait has no authority to prosecute the action under the PSLRA.[6]  Plaintiff rejoins that defendants' argument was mooted by Rensin's November 2, 2009 filing of a "corrected" complaint,[7] which "merely corrects . . . scrivener's errors concerning the identit[y] of Lead Plaintiff."[8]  While the failure of counsel to keep track of whom they are representing is disquieting, the Court will proceed on the assumption that the Coughlin Firm filed the amended complaint on Rensin's behalf.

Defendant Regions Financial Corporation ("Regions") is a Delaware corporation and a regional bank holding company with its principal executive offices in Birmingham, Alabama. Defendant Regions Financing Trust III (the "Trust") is a Delaware statutory trust, a wholly owned subsidiary of Regions, and the issuer of the Trust Preferred Securities.

Each of the individual defendants was a member of the board of directors of Regions in 2008 and signed the Offering Documents and  Regions' 2007 Form 10-K, which the Offering

---

[4] See DI 16; DI 23.

[5] See DI 34, Am. Cpt. ¶ 32.

[6] See Regions Mem. at 21.

[7] See DI 44.

[8] Pl. Mem. at 3 n.2.

4

Documents incorporated by reference.[9]

Defendant Ernst & Young LLP ("E&Y") is an accounting firm that served as Regions' auditor.  E&Y certified a portion of the registration statement and the financial statements in Regions' 2007 10-K.  The registration statement incorporated by reference E&Y's audit opinions of Regions.[10]

*Regions' Acquisition of AmSouth*

In May 2006, Regions announced an agreement to acquire AmSouth Corporation ("AmSouth"), another bank holding company.  The deal closed in November 2006.[11]  The merger proxy statement disclosed that AmSouth's assets would be recorded at their fair value at the time of the acquisition.  It disclosed also that "[a]ny excess of purchase price over the net fair value of AmSouth assets and liabilities is recorded as goodwill (excess purchase price)."[12]  Regions' balance sheet thereafter reflected $6.2 billion of goodwill in connection with the acquisition.[13]

*The Offering*

On April 28, 2008, the Trust issued 13.8 million shares of Trust Preferred Securities

---

[9]    Am. Cpt. ¶¶ 3, 34-48, 109.

[10]   *Id.* ¶ 58.

[11]   *Id.* ¶¶ 68, 73.

[12]   *Id.* ¶ 69.

[13]   *Id.* ¶ 152.

5

– "hybrid" securities that have characteristics of both equity and debt – at $25 per share in a registered public offering.[14]   The Offering Documents incorporated by reference Regions' 2007 Report on Form 10-K and other Securities and Exchange Commission ("SEC") filings Regions had made before April 28, 2008.[15]

*The Amended Complaint*

The amended complaint alleges that the Offering Documents were "negligently false and misleading" because they incorporated by reference Regions' 2007 10-K, which allegedly contained misstatements concerning Regions' goodwill and loan loss reserves.[16]   It alleges that over seventy-one percent of the reported fair value of AmSouth's assets at the time of the acquisition was attributable to AmSouth's loan portfolio, which was "grossly overstated due to its gross understatement of loan loss reserves."[17]   It further contends that Regions "did not write down any of the massive goodwill" it recorded in its 2007 10-K "despite growing evidence indicating that serious problems existed at the time of the acquisition with AmSouth's loan portfolio."[18]   The amended complaint alleges also that Regions "only marginally increased its loan loss reserves"

---

[14]
　　　*Id.* ¶¶ 3, 25.

[15]
　　　*Id.* ¶¶ 16, 18.

[16]
　　　*Id.* ¶ 104.

[17]
　　　*Id.* ¶ 153.

[18]
　　　*Id.* ¶¶ 10, 154.

6

despite "the high risk of loss inherent in its mortgage loan portfolio."[19]

The amended complaint further alleges that the Offering Documents misstated that Regions' goodwill valuation and provision for loan loss reserves complied with generally accepted accounting principles ("GAAP") and the Sarbanes-Oxley Act ("SOX").  It claims as well that E&Y falsely certified that Regions' financial results complied with GAAP and that E&Y's audits complied with generally accepted accounting standards ("GAAS").

The Regions defendants[20] and E&Y each move to dismiss the amended complaint, principally on the ground that plaintiff has failed to allege actionable misstatements or omissions.

*Analysis*

I.    *Legal Standard*

In deciding a motion to dismiss, a court ordinarily accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.[21]  In order to survive such a motion, however, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"[22] Although such motions are addressed to the face of the pleadings, the court may consider also documents attached

---

[19]     *Id.* ¶¶ 10, 168.

[20]     The Regions defendants are Regions, the Trust, and the individual defendants.

[21]     *See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001).

[22]     *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (declining to limit *Twombly* to antitrust cases).

7

to or incorporated by reference in the amended complaint as well as legally required public disclosure documents and documents possessed by or known to the plaintiff upon which it relied in bringing the suit.[23]

Sections 11 and 12(a)(2) are "Securities Act siblings with roughly parallel elements."[24] Section 11 applies to registration statements while Section 12 applies to prospectuses or oral communications connected with a sale.[25] "Collectively, the language of sections 11 and 12(a)(2) creates three potential bases for liability based on registration statements and prospectuses filed with the SEC: (1) a misrepresentation; (2) an omission in contravention of an affirmative legal disclosure obligation; and (3) an omission of information that is necessary to prevent existing disclosures from being misleading."[26] Section 15 creates liability for individuals or entities that "control[led] any person liable" under Section 11 or 12.[27]

II.    *Existence of Actionable Misstatements or Omissions*

The amended complaint alleges that the Offering Documents contained false and misleading statements regarding Regions' (1) goodwill and loan loss reserves and (2) maintenance

---

[23]

*ATSI Commc'ns, Inc.*, 493 F.3d at 98; *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

[24]

*In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010).

[25]

*Id.*

[26]

*Id.*

[27]

*Id.* (quoting 15 U.S.C. § 77o).

of "effective internal control over financial reporting" pursuant to SOX.[28]


     *A.     Goodwill and Loan Loss Reserves*

     Plaintiff asserts that Regions' 2007 Form 10-K, which the Offering Documents incorporated by reference, overstated goodwill in connection with Regions' 2006 acquisition of AmSouth and understated the expected losses in Region's loan portfolio.  It alleges also that the 10-K was not "prepared in conformity with GAAP"[29] because the company's goodwill valuation allegedly was stale and its loan loss reserves were "inadequate" at the time of the Offering.[30] Defendants rejoin that Regions' goodwill and loan losses were opinions or judgments about future events, not statements of fact, and therefore cannot constitute actionable misrepresentations.

     In order to state a claim under the Securities Act, the amended complaint must allege a misstatement or omission of fact.  An opinion is actionable under Section 11 or 12 only if the complaint alleges that the speaker did not truly hold the opinion at the time it was issued.[31]

---

[28]

     Am. Cpt. ¶ 192.

[29]

     *Id.* ¶ 142.

[30]

     The amended complaint likewise alleges that E&Y's audit opinion falsely stated that Regions' 2007 financial statements satisfied GAAP and that E&Y's audits complied with GAAS.

[31]

     *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK), __ F. Supp. 2d __, 2010 WL 545992, at *6 (S.D.N.Y. Feb. 17, 2010); *see also Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092-96, 111 S. Ct. 2749 (1991); *In re AOL Time Warner Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 243-44 (S.D.N.Y. 2004).

       *1.     Goodwill*

       When one company acquires another, GAAP requires that it book any excess of the purchase price over the fair value of the assets acquired as goodwill, or "excess purchase price."[32] According to Financial Accounting Standards Board's Statement of Financial Accounting Standards No. 142 ("SFAS 142"), the value of goodwill thereafter should be tested for impairment at least annually and "more frequently if events or changes in circumstances indicate that the asset[s] might be impaired."[33]  Thus, goodwill should be tested if a significant adverse change in the company's business climate "more likely than not would reduce the fair value of a reporting unit[34] below its carrying amount."[35]

       Regions booked $6.2 billion of goodwill, the difference between the purchase price and the net fair value of AmSouth's assets, in connection with the AmSouth acquisition.  It concededly tested for goodwill impairment pursuant to SFAS 142 at the end of 2007, but recorded no impairment in its 2007 10-K.[36]  Plaintiff nevertheless contends that Regions used "unreasonable"

---

[32]

    *See* Hunter Decl. Ex. J, SFAS No. 141.

[33]

    *Id.* Ex. G, SFAS No. 142 , ¶ 17; *see City of Omaha v. CBS Corp.*, No. 08 Civ. 10816 (PKC), slip op. at 16 (S.D.N.Y. Mar. 16, 2010).

[34]

    A reporting unit is the component of a company that "constitutes a business for which discrete financial information is available and segment management regularly reviews the operating results of that component."  Hunter Decl. Ex. G, SFAS No. 142 ¶ 30.

[35]

    *Id.* ¶ 28.

[36]

    *See* Am. Cpt. ¶ 156 ("At year end 2007, when Regions' annual impairment test was scheduled, the Company performed a test but utilized assumptions so unreasonable that it resulted in no impairment charge related to its AmSouth operations.").

assumptions and was required under SFAS 142 "to properly test for goodwill impairment, at the very latest, before issuing Regions' false and misleading Prospectus." He asserts that Regions' failure to do so "[d]espite the continued downward spiral in the financial markets . . . converted" its alleged compliance with GAAP into a false statement.[37]

There is a fundamental difficulty with plaintiff's theory. He quite understandably attempts to fit his claim with Sections 11 and 12 of the Securities Act rather than Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder because the Securities Act provisions, unlike Section 10(b) of the Exchange Act, do not require pleading proof of *scienter* in a case based upon a misstatement or omission of a material fact. The problem, however, is that the alleged overstatement of goodwill in the 2007 10-K and the incorporation of the figure in the Offering Documents without downward adjustment, even on plaintiff's theory, did not involve misstatements or omissions of material *fact*.

As noted previously, the goodwill reflected in the 2007 10-K was the excess of the acquisition price, an objective fact, over the fair value of AmSouth's assets at the time of the acquisition. The fair value of those assets, the majority of which consisted of the value of AmSouth's loan portfolio, however, was not a matter of objective fact. Those assets were not traded on the New York Stock Exchange or some other efficient market where the fair market value typically is the price at which a share or other asset is trading at any given moment. Nor has plaintiff pointed to any other objective standard of value. Rather, the value of such assets is a matter of

---

[37] Pl. Mem. at 20.

judgment and opinion.[38]

      This is quite significant.  Given the lack of any objective or readily determinable value for the AmSouth assets acquired in the acquisition, "the question of material falsity" of the stated goodwill "is whether the representation was false – not because the value [was] 'wrong' in some empirical sense, but because" the financial statement in the 10-K did not reflect management's "honest opinion."[39]

      The amended complaint does not allege that Regions' 10-K knowingly or recklessly misstated goodwill.  Indeed, it specifically disclaims any such allegation,[40] obviously in an attempt to avoid pleading fraud and thereby triggering the enhanced pleading requirements of the PSLRA[41] and Rule 9(b).[42]  And even if the pleading nevertheless were construed as alleging a deliberate overstatement, it would fail because it does not meet those requirements.

---

[38]

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*, LLC, 479 F. Supp. 2d 349, 361-63 (S.D.N.Y. 2007) (valuation of collateralized mortgage obligations not traded on regular exchange "considerably more a statement of opinion than a report of an objectively determinable fact").  *See Tsereteli v. Residential Asset Securitization Trust 2006-A8,* No. 08 Civ. 10637 (LAK), __ F. Supp. 2d __, 2010 WL 816623, at *4 (S.D.N.Y. Mar. 11, 2010) (appraisal or judgment as to real estate or loan value is "a subjective opinion based on the particular methods and assumptions the appraiser uses"); *In re Salomon Analyst Level 3 Litig.,* 373 F. Supp. 2d 248, 251-52 (S.D.N.Y.2005) (Lynch, J.) ("[V]aluation models depend so heavily on the discretionary choices of the modeler . . . that the resulting models and their predictions can only fairly be characterized as subjective opinions.").

[39]

*Id.* at 363.

[40]

*See* Am. Cpt. ¶ 230 ("Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on theories of strict liability and negligence . . . .").

[41]

15 U.S.C. § 78u-4(b).

[42]

FED. R. CIV. P. 9(b).

       The allegation that Regions violated the Securities Act by incorporating the 10-K in the Offering Documents without adjusting the stated goodwill downward in light of allegedly changing market conditions[43] yields to the same analysis. Regions was required by GAAP to test its goodwill if it thought that a significant adverse change in its business climate more likely than not had reduced the goodwill figure and to adjust the figure if the carrying amount of the assets exceeded their fair value.[44] But the goodwill stated on the balance sheet reflected judgments as to values that were not objectively determinable. The truth or falsity of that statement therefore was a matter of opinion.[45] In the absence of particularized allegations that management believed that the goodwill figure was materially overstated, the amended complaint is insufficient in this respect as a matter of law.[46]

---

[43]

       Am. Cpt. ¶ 154.

[44]

       SFAS No. 142. ¶¶ 17, 28.

[45]

       Plaintiff's asserts courts have "rejected numerous times" the argument that goodwill is a matter of judgment or opinion. This is simply incorrect. The cases on which plaintiff relies have not addressed the issue and plainly are distinguishable. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003).

[46]

       *See, e.g.*, *City of Omaha,* slip op. at 17 (dismissing 10b-5 claim based on alleged misstatement of goodwill because "[t]he complaint does not cite to any knowledge by the defendants or event unique to the first quarter of 2008 that placed the defendants on notice of likely impairment to goodwill"); *City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Group Pub. Ltd. Co.*, 655 F. Supp. 2d 262, 269-70 (S.D.N.Y. 2009) (dismissing Section 10(b) claim where goodwill "impairment charge was contingent on the company's judgment about future events and its likely future income").

       Plaintiff's claims that E&Y's audit opinion misstated that Regions' financial statements and E&Y's audits complied with GAAP and GAAS, respectively, are derivative of plaintiff's claims for misstatements of goodwill and loan loss reserves, and, in any event, insufficient as a matter of law.

Plaintiff's reliance on a June 17, 2008 letter from the SEC to Regions, in which the SEC allegedly "questioned the validity of Regions' goodwill balance" in connection with Regions' 2007 10-K, does not alter this conclusion.  Its allegations about the SEC comment letter are misleading, as the SEC did not "question the validity of Regions' goodwill balance."[47]  It instead requested that Regions disclose how it "determined that [its] goodwill balance [was] not impaired" in light of "the fact that [it had] been trading at a market value that is below [its] book value." Regions responded that its management had "determined that a potential buyer would offer a control premium for our business franchise that would adequately cover these differences between trading prices and book value."[48]  The SEC replied that it had "no further comments."[49]  In any event, Regions' correspondence with the SEC occurred nearly two months after the Offering.  It therefore does not support an inference that Regions was aware that its goodwill was impaired at the time its alleged misstatements were made public.

2.    *Loan Loss Reserves*

Plaintiff asserts also that the Offering Documents contained misstatements regarding Regions' loan loss reserves.[50]

---

[47]    Am. Cpt. ¶¶ 155, 157.

[48]    Hunter Decl., Ex. Y, at 4.

[49]    *Id.* Ex. Z.

The SEC did request additional disclosures in future filings.  *Id.* Ex. X, at 1-2.

[50]    *Id.* ¶¶ 164-85.

14

Under GAAP, a company is required to have adequate reserves for estimated losses in connection with (1) loans specifically identified as being impaired and (2) loans with specific characteristics that indicate probable losses.[51]  A company must reserve also for "estimated credit losses inherent in the remainder of the portfolio based on current economic events and circumstances."[52]  Loan loss reserves therefore reflect management's opinion as to the likelihood of future loan losses and their magnitude.[53]

The amended complaint alleges that its loan loss reserves "from the first quarter of 2007 through the first three quarters of 2008 were materially inadequate and did not reflect the high risk of loss inherent in its mortgage loan portfolio, which included AmSouth's ARMs [adjustable rate mortgages] from the over-stimulated Florida real estate lending market between 2004 and 2006."[54]

Whether Regions had adequate reserves for its predicted loan losses is not a matter of objective fact.  The reserves instead were statements of opinion by defendants as to the portion of the stated value of Regions' loans that would prove to be uncollectable.  The complaint, however,

---

[51]

Id. ¶ 166.

[52]

Id. ¶ 167.

[53]

First Nationwide Bank v. Gelt Funding Corp., 820 F. Supp. 89, 95 (S.D.N.Y. 1993) ("[T]he taking of loan loss reserves is based on managerial guesswork about the future."), aff'd, 27 F.3d 763 (2d Cir. 1994); see also Am. Cpt. ¶ 167 ("It is critical that loan loss allowance methodologies incorporate management's current judgments about the credit quality of the loan portfolio.") (quoting SEC Staff Accounting Bulletin No. 102); Id. ¶ 174 ("The important consideration is whether the allowance reflects an estimate of probable losses . . . .") (quoting Emerging Issues Task Force Topic No. D-80).

[54]

Am. Cpt. ¶ 168.

15

is devoid of any allegation that defendants did not truly hold those opinions at the time they were made public.[55]  Plaintiff indeed disclaims any allegation that defendants knowingly or recklessly misstated Regions' loan loss reserves.[56]

Plaintiffs conclusory allegations that Regions' provision for loan losses was "woefully inadequate" and did not comply with GAAP therefore are insufficient to state a claim.

---

[55]

Plaintiff contends that it is not required to plead the "subjective falsity" of statements concerning loan losses.  Pl. Mem. at 24 (citing *In re Wash. Mut. Inc. Sec. Litig.*, 259 F.R.D. 490 (W.D. Wash. 2009)).  Plaintiff's assertion, however, is singularly unpersuasive for the reasons already stated.  Moreover, it conflicts with abundant case law in this Circuit.  *See, e.g., In re CIT Group, Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 689 (S.D.N.Y. 2004) ("[S]tatements about defendants' belief in the adequacy of loan loss reserves could be actionable [under the Securities Act] if it is alleged that defendants did not actually believe that loan loss reserves were adequate, or if defendants had no reasonable factual basis for their belief.") (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092-93 (1991)); *Hinerfield v. United Auto Group*, No. 97 Civ. 3533 (RPP), 1998 WL 397852, at *7 (S.D.N.Y. July 15, 1998) (Securities Act claim failed because "[t]he Complaint's allegations that the defendants knew or should have known about the inadequacy of the reserves are conclusory and unsupported by additional factual allegations . . . to support an inference that this failure was the result of anything but inaccurate forecasting or unforeseen circumstances.") (internal citation omitted); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) ("[Plaintiff] does not allege facts that would give rise to a strong inference that defendants knew or recklessly disregarded the fact that the loan loss reserve was inadequate, or that continuing erosion of the real estate market would render the loan portfolio precarious, or that the outlook was poor."); *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978); *Ciresi v. Citicorp.*, 782 F. Supp. 819, 821 (S.D.N.Y. 1991) ("[T]he claim that the defendants did not plan their loan reserves properly is essentially a claim that defendants mismanaged the company.  If well-pled, allegations of mismanagement are not actionable under section 10(b) of the federal securities laws."), *aff'd*, 956 F.2d 1161 (2d Cir. 1992); *cf. In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998); *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990).

[56]

*See* Am. Cpt. ¶ 230 ("Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on theories of strict liability and negligence . . . .").

B.      *Sarbanes-Oxley Certifications and Regions' Internal Controls*

        The amended complaint alleges that the Offering Documents contained "false and misleading" SOX certifications based on Regions' allegedly overstated goodwill and underestimated loan loss reserves.[57]  Plaintiff asserts that the Offering Documents "misled investors regarding the effectiveness of" the Company's internal controls pursuant to SOX because "Regions lacked adequate controls to ensure that its goodwill was properly tested for impairment, and whether its loan loss reserves properly accounted for . . . 'stressed' loans on the Company's books."[58]

        These allegations are duplicative of plaintiff's claims for misstatements of goodwill and loan loss reserves and, in any case, are unsupported by appropriate facts.  They therefore are insufficient to state a claim.

III.    *Section 15*

        To establish a claim under Section 15 of the Securities Act, a plaintiff must allege (1) a primary violation of the Section 11 or 12(a) by a controlled person or entity, and (2) direct or indirect control by the defendant of the alleged primary violator.[59]  As discussed, plaintiff has failed to allege a primary violation of Section 11 or 12(a).  In consequence, plaintiff's Section 15 claim also fails.

---

[57]    *See, e.g.*, Am. Cpt. ¶¶ 106, 190.

[58]    Pl. Mem. at 26.

[59]    *See, e.g.*, *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 358-59, 366; *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996); *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 618 (S.D.N.Y. 2008).

17

*Conclusion*

Defendants' motions to dismiss the amended complaint [DI 35, 39] are granted.

SO ORDERED.

Dated:        May 10, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)